Argument not to exceed 15 minutes, Ms. Calloway and Mr. Hautzenroeder, please come to the stage. Good morning, may it please the court. My name is Wendy Calloway. I'm here on behalf of the appellant and I'd like to reserve five minutes for a battle, please. That's fine. The issue before the court today is whether an individual who is subjected to Ohio's sex offender registration scheme is in custody for purposes of a habeas petition. The appellant in this case was convicted in the state court in the state of Ohio for one count of sexual battery and as a result of that, she was designated as a tier 3 sex offender and had numerous obligations and restrictions as a result of that. She exhausted her appellate remedies in state court and then filed a habeas petition to challenge the basis of that conviction. The district court dismissed the petition for lack of jurisdiction, saying that the petitioner was not in custody and citing this court's decision in Leslie. We are here today asking the court to revisit that decision for a number of reasons. First of all, the legislative scheme that the Leslie case was based on has been repealed and replaced with a new sex offender registration scheme that is far more onerous, far more restrictive, and far more expansive. One of the things that this court based its decision on in Leslie is the Supreme Court of Ohio's decision in Cook. In Cook, the Supreme Court determined that the sex offender registration scheme in place at that time was remedial. It was a civil collateral consequence, it wasn't punitive, and therefore this court adopted that and determined for other reasons as well, but that was one of the primary reasons that the sex offender registration scheme or being subjected to it did not count as custody. So because we have a new registration scheme in place in Ohio, I believe it's appropriate for this court to revisit the holding. The Leslie decision does not apply to the legislative scheme that's in place now. Do you have a real good case on your side or are you just wanting to say this is reasonable? Is there one from this circuit or one from any other circuit in line with what you're saying here? There is no circuit in the country that has made the determination that being under a sex offender registration scheme would count as custody for purposes of a habeas petition that I'm aware of. However, the circuits that have examined the sex offender registration legislation, none of them have looked at a scheme that is like the one in Ohio except the Tenth Circuit. And I will address the Tenth Circuit's decision in a moment, but no, I'm asking the court here to do something that other circuits haven't done, but it is the right thing to do and it is consistent with the law that the Supreme Court has handed down. In order, there is no formula for what custody means. But counsel, could I clarify your point? There is no court in the country, and then follow up to that argument, is there another scheme in the country that you would say is analogous to Ohio? Yes. I should think Ohio wasn't unique. That is correct. There is one in Michigan that the government has conceded is substantially similar to what's in place in Ohio. And this court has spent a substantial amount of time examining that registration scheme and has had a lot to say about it. In Doe v. Schneider, this court did an exhaustive analysis of the Michigan scheme, which is much like what's happening in Ohio, and made a determination that that registration scheme was punitive. I understand that the issue that's before the court today was not before the court in Doe, but there is a lot of analysis in that case that is instructive here. The issue of custody, as I said, is not determined by a formula. There are a couple considerations that the courts look at. Whether there is a significant restraint on an individual's liberty that is not shared by the public generally, and whether it's a collateral consequence of a conviction. In this case, there are restrictions on the liberty of people who are put under this scheme that are not shared by the public generally. Is the question liberty or is the question movement? According to Jones v. Cunningham, the issue is liberty. Now, as I said, courts have used different terms. This court in Leslie used the term movement. The Supreme Court in Cunningham used the term liberty. So that is a little bit fluid. Just to be clear, we understand that the limitation on a sex offender in Ohio, somebody convicted as your client was, is that you can't live near a school, primarily, somewhere where there's children. Okay, that is part of it. Is there any other restriction on movement? Well, there's a couple. So she has to report in person every night. I'm not asking about reporting. I don't think. Well, that restricts her movement. She can't be where she wants to be when she has to go report. So that's a restriction on her movement or her freedom. Also, within three days of leaving the county, she has to, again, show up at the sheriff's office, a place where she doesn't want to be, a restriction on her movement. Requirements. Correct. Are they restrictions, counsel? Yes. I guess that's a question that we wrestle with. Yes, they are restrictions. There's also effects that are in place because of this legislation that restrict her movement. She's been banned from her child's school, and I would submit to the court that that's due to the public dissemination requirements, the collection requirements, that then they distribute to all the school principals and administrators and many people. And as a result of that, she's now been told that she can't pick up her daughter from school, attend events, or be involved in parenting in that way. So those are all restrictions on her freedom that other people do not suffer. That wasn't in the earlier law about that she couldn't be around schools and all that sort of thing? Well, the residency requirement was not in the previous legislation. So she's not permitted to establish a residence or occupy a residence within 1,000 feet of a school. That's new. The requirement that she report to the sheriff and the place where she works and goes to school is in addition. So they've expanded it from just in the county where you live. Now you have to report where you work and go to school if that's in a different county. And the restriction on travel has been expanded. In addition, it's clear that this is not a collateral consequence. The Supreme Court in Williams revisited the Cook decision and looked at the legislation that's in place and a detailed analysis and said this is clearly punitive. This is not a collateral consequence of a conviction. Further, this designation is within the control of the sentencing court. So it has to be in the sentencing entry. The court has to announce it at sentencing and place this designation on the offender. If the sentencing court fails to do that, the restrictions don't apply. So this is simply not like losing your voting rights or the right not to own a firearm or losing your right to have a driver's license. Those things that arise by operation of law, those are collateral consequences. This is part of the punishment, and the Supreme Court has indicated that. When you say within the control of the sentencing court, does the court have any discretion at all? Or must the court simply order this registration by virtue of a statutory requirement? The court is required to order it, but the court is required to order it. So there's cases in Ohio where the court has failed to do that, and then the offender is not subject to the restrictions. I also would like the court to consider the cases that have analyzed what is custody in terms of parole and probation. This court made a pretty definitive determination in Doe v. Snyder that the sex offender registration scheme in Michigan was akin to probation and parole. You're told where you can go, what you can do, where you can live. There are restrictions on what you have to do. You're told where you can go. Yes. How is that analogous to your client? She is not permitted. There are places she's not permitted to go as a result of this. We're still agreeing that that is within and around a school. Within and around a school. Is there any other? Other than when she, every 90 days, has to go to the sheriff's office. She must appear. Yes. Okay. So there's any other restriction on where she may go? Not that I'm aware of. But these restrictions are far more onerous than a probationer or a parolee who also isn't told where they can go. They're just on probation. They may have to report occasionally. The restrictions for probation and parole vary quite a bit. But the courts unanimously have determined that if you're on probation or parole, you're in custody. This is a designation requirements and restrictions that my client is subjected to for the rest of her life. It can never be removed. What happens if she's caught within 1,000 feet of a school? Do they automatically violate this condition and put her in jail? Or is she tried separately for that offense? If she establishes a residence or occupies a residence within 1,000 feet of a school, then she's subjected to a criminal charge that subjects her to three years in prison. So she would have due process rights, much less if a probationer is violated, they get to go before a court and they have due process rights. You get it right to trial in front of a jury and all that? Because a probationer doesn't have that, you know. A probationer goes in front of a judge or a board or something and they say, you violated probation, and so you're gone. But in this case, would she have gone before a judge or have a right to trial entirely? She would have the right to a trial. A separate offense, right? A separate offense, correct. But her freedom, her continued freedom in the community is contingent on her compliance with these rules and making sure that she doesn't go where she's not supposed to go and that she does the things that she's supposed to do, much like someone that's on probation. You said you were going to address the Dickey case and you did not. The Tenth Circuit did not buy your argument here. Yes. And maybe you can tell us why the situation in the Tenth Circuit is different from Ohio's. So the Tenth Circuit case is out there. And in looking at it, here's what I have to say about it. Number one, it is not binding on this court. Number two, the decision that was issued was not published. And the analysis was absent. They made the decision in two paragraphs as part of a larger case where they just said, oh, this is a collateral consequence. They cited previous cases that have made that determination. And they didn't analyze exactly what was happening. So this court in Dover v. Snyder really looked at the issue and said, here's what's really happening. Let's be honest about what the effect of this really is. And this court did some true analysis. The Tenth Circuit did not address the specifics at all. Okay. Well, thank you. You'll have your full rebuttal. Thank you. Thank you. Good morning, Your Honors. My name is Scott Criss. I'm here on behalf of the Ohio Attorney General. As Judge Cook pointed out already and we pointed out in our brief, there is no circuit case that supports the proposition that the restrictions in the Ohio registration scheme justify or constitute custody for habeas corpus. I'd go further and say there's no district court cases, reported or unreported, that we could find not a single federal case anywhere that has examined a scheme that has found that it is custody for the purposes of habeas corpus. The closest that I could find in which we, I didn't find it, the attorney who wrote the brief found it, was Wilson v. Flaherty, which is a Fourth Circuit case in 2012. In that case, the court said that the petitioner had to report in person every 90 days, had to re-register every time they changed their address, their employment, got a new car, got a new email address. The petitioner couldn't adopt his own stepson. He couldn't go to his stepson's school. He was not permitted to travel to Canada for a honeymoon. Don't know what that's about. And had to notify authorities if he was leaving the state for more than 24 hours. Those type of restrictions in Virginia's scheme, in Wilson v. Flaherty, were not found to be constituting custody. More onerous, but not custody. Right. They were not significant enough to call it custody for the purposes of federal habeas corpus. They sure sound more restrictive than being on probation, right? Or on parole, either one. They certainly are. I mean, probation and parole, obviously, you are at the beck and call of your probation and parole officer 24 hours a day. He could call you and say, come and report, and you have to report. There's certainly nothing like this with a registration scheme because the sentence has already expired. That's the main difference. You can draw all the comparisons you want between probation and parole and a registration scheme like this. But the key difference is if you're on parole or you're on probation, you have a sentence hanging over you. You have some term of years left to serve the state if you mess up on probation or parole. That's not the case here. As you indicated, as her answer indicated, if you mess up on the registration scheme, you're subject to a further criminal trial, but that's a whole new set of due process that you have to go through in order for the state to convict you of a crime at that point. I wanted to circle back because I think counsel told the court that a violation of establishing a residence within the range of a school, in violation, that violation, I thought that counsel told the court that that was, that you're subject to criminal sanctions therefore. And it looked to me like the Ohio Revised Code established injunctive neighbors could bring an injunction. They could sue you and enjoin you from establishing that residence. That's different, I think, than what counsel told the court. I will concede that I do not know the answer to that question. If that's your reading of the revised code, then I'll trust you on that. I do not know what the penalties are for the various violations that could occur in the registration scheme. As to the restriction that she cannot go to her daughter's school, that is also not in the code. That's between her and her daughter's school. The Ohio Administrative Code allows for a school to report to the sheriff that somebody who is on the registration has been at the school or is in the area of the school. But there's no mechanism for a ban or anything like that. So I can't speak to what's going on in that situation. But as far as I can tell, that is not in the revised code and not part of the registration scheme. I don't want to take up too much time repeating myself. I'll just say again, there is no case that supports the proposition that custody is present here. But I will say this with respect to Leslie, which we rely on. Leslie did discuss or apply to the prior registration scheme. And it was before the Ohio Supreme Court found that the new scheme is punitive. But punitive doesn't equal custody. In Judge Clay's concurrence in Leslie v. Randall, he even suggested that the Megan's Law scheme that was at issue in Leslie v. Randall might be punitive. And so the petitioner might have an ex post facto claim that he might want to pursue. But that didn't lead Judge Clay to, for instance, dissent and say, hey, wait a minute, this is punitive. Therefore, it's custody now. What he said was it's punitive. You might have an ex post facto claim, which is exactly what this court said in Dovey Snyder in the Michigan case. It had nothing to do with custody. It had to do with the 1983 claim. So there is no applicability to this case. Unless you have any questions. Apparently not. Thank you, Mr. Bruce. Thank you. What do you think, Ms. Callaway? With regard to 2950.34B. With regard to the issue of the injunction or the remedy for violating the residency restrictions, I'll defer to the court's reading of the statute. It was my understanding that the injunction was the remedy in the previous statute. I thought that in the new statute that that is something that could give rise to a charge for violating the duties to register. But if the court is reading that differently, I defer to the court. With regard to the other issues, though, I have to draw the court back to Dovey vs. Snyder. The court made some findings about the Michigan scheme that are controlling law here. And they analogized the reporting requirements, the every 90 days in three places, and the restrictions on how and when you can travel. Travel is contingent on showing up at the sheriff's office and telling them you're a sex offender. And the residency restrictions. There was a quote. They said these are direct restraints on personal conduct. That is this court's determination about those restrictions and obligations. And the court specifically analogized those requirements to probation and parole. Restrictions on where you can live, telling someone they have to report in person, and you can be punished for these things by imprisonment. Those are all things that were in the Doe case and that this court specifically said are just like probation and parole. And made a finding that in some cases they're worse than probation and parole. So if probation and parole is custody, then being under a sex offender designation is certainly custody. This is something that you can never get out of. And your freedom in the community, your ability to be in the community and out of a jail cell, is contingent upon your compliance with these restrictions that are part of the criminal sentence. And so I understand that for years we have said that no, this is just a collateral consequence. This is just like losing your right to vote. But I think it's time that we look at the reality of what is happening to people and say that sex offender registration laws have evolved over time. And they continue to be more expansive and more intrusive. And the facts of this particular case, my client is basically a status offender. She was alleged that she had consensual sex with a person who was allowed to have consensual sex with her. There's no allegation of force or child rape or anything like that. The only reason my client was charged with a crime is because she happened to be at a teacher where this person went to school. And so now for the rest of her life she has to show up to the sheriff's office in three places potentially and announce, hi, I'm a sex offender, I'm here. And the restrictions that that puts on someone's life are real. And I don't think that we can ignore them because, well, they're intangible consequences. This court talked about the Michigan scheme being akin to banishment. And that is what happens. We are relegating these people to certain segments of society and telling them that they have to do what we say or we are going to put them in prison. That is the definition of custody. Those are restraints and restrictions that are not suffered by the population generally. These are not collateral consequences and it's time for this court to acknowledge that fact. The Wilson case is not analogous to the restrictions here. They have a lot of the same things but they're missing some important ones. There was no residency restriction in Wilson. So the court, when they're looking at Virginia, did not have an analogous statute. There was no requirement that the offender register where they go to school or where they work. And the breadth of the community notifications were far less than what is required by the Ohio statute. When the government conceded in its brief that the Michigan scheme and the Ohio scheme are substantially similar, I believe that puts Doe v. Snyder in play. And the findings that that court made are significant and important. And I urge the court to apply those findings to the case at Bar and make the determination that sexual registration counts as custody for purposes of habeas petitions. Okay. Thank you, counsel, for your arguments today. We very much appreciate them. The case will be submitted and you may call the next case.